IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES M. MILLER and,
J.M. MILLER, INC.
Plaintiffs,

Civil Action No. 06-384

TEXAS AGA, INC.
and
HAROLD EARL TAYLOR, JR.

MEMORANDUM AND ORDER

Gary L. Lancaster,
District Judge.

December 21, 2006

This is an action alleging intentional interference with contractual relations. Plaintiffs, James M. Miller and J.M. Miller, Inc., allege that defendants, Texas AGA, Inc. and Harold Earl Taylor, Jr., wrongfully solicited plaintiffs' clients. Defendants contend that their actions do not constitute unlawful interference because they are plaintiffs' business competitors. Defendants have filed a motion for summary judgment. For the reasons set forth below, defendants' motion will be granted.

I. BACKGROUND

Unless otherwise indicated, the following facts are undisputed[1].

---

[1] It appears that no discovery was conducted in this case. Thus, the only evidence of record is: The Amended Complaint, [Doc. No. 13], defendants' Answer [Doc. No. 14], the Affidavit of Alfred Raymond Bangs, [Doc. No. 10], the Motion for Summary Judgment [Doc.

Plaintiff J.M. Miller, Inc., is a corporation organized under the laws of Pennsylvania. Plaintiff James M. Miller is a Pennsylvania resident. James M. Miller incorporated J.M. Miller, Inc., and is the president, secretary and sole shareholder. James M. Miller sells insurance to the commercial explosives and blasting industry.

Defendant Texas AGA, Inc. ("Texas AGA"), is a Texas corporation. Texas AGA is an insurance broker which also sells insurance coverage to the commercial explosives and blasting industry. Defendant Harold Earl Taylor, Jr., is the Vice-President of Texas AGA. Affiant Alfred Raymond Bangs is the President of Texas AGA.

Texas AGA sells insurance from Lancer Insurance Company and Fairmont Specialty Group/Ranger Insurance to its customers. Texas AGA, Inc., has an exclusive marketing agreement with Fairmont Specialty Group/Ranger Insurance (hereinafter "Fairmont Group"). Texas AGA does not have an exclusive marketing arrangement with Lancer Insurance.

According to Mr. Bangs, beginning in 2003, plaintiff Miller "actively solicited customer of Texas AGA and competed with Texas AGA for the placement of insurance coverage for companies in the explosives industries." Mr Miller successfully obtained the business of two former Texas AGA clients, while

---

No. 15] and the response thereto [Doc. No. 17].

working for his prior employer. Plaintiff Miller sold insurance written by Lancer Insurance company to these former clients of defendants.

In July 2004, plaintiffs "developed an affiliation with Ebensburg Insurance Agency" (hereinafter "Ebensburg") in order to sell insurance from the Fairmont Group. In the same month Ebensburg entered into a Producer Agreement with Texas AGA which allowed it to sell insurance coverage written by the Fairmont Group. Defendants terminated their relationship with Ebensburg on April 1, 2005, pursuant to the terms of the Producer Agreement, because of plaintiff Miller's solicitation of Texas AGA customers set forth above.

Plaintiffs contend that they submitted insurance information regarding their clients to Texas AGA through Ebensburg, for the purpose of obtaining insurance written by the Fairmont Group for their customers. Plaintiffs further contend that Texas AGA wrongfully utilized this information to solicit their clients and obtain their business. Plaintiffs specifically contend that defendants wrongfully obtained the business of Maurer & Scott and D.C. Guelich. Plaintiffs also contend that Texas AGA terminated its relationship with Ebensburg in order to prevent plaintiffs from selling Fairmont Group insurance to their clients. Plaintiffs contend that Texas AGA attempted to sell Fairmont Group insurance to plaintiffs' clients directly.

Defendants have submitted evidence that in February of 2004, Maurer & Scott approached them to obtain insurance. Maurer & Scott appointed Texas AGA as their broker of record with Lancer Insurance Company on February 26, 2004. Thereafter, defendants obtained insurance for Maurer & Scott through Lancer Insurance Company commencing on April 1, 2004 and ending on April 1, 2005. Maurer & Scott continued to plaintiffs' services to obtain their workmens' compensation and property insurance for that year. Prior to the renewal date for their insurance, Maurer & Scott informed defendant Earl Taylor that it was considering engaging plaintiffs to obtain their insurance. On March 31, 2005, Maurer & Scott submitted a broker of record letter to Lancer Insurance Company, appointing plaintiff Miller as its broker of record. Texas AGA waived the standard ten day waiting period, and allowed plaintiff Miller to obtain the commission on the sale despite the fact that Texas AGA had performed all the underwriting work necessary for the renewal. It appears that Maurer & Scott continues to use plaintiff Miller as its insurance broker to this day.

As to D.C. Guelich, defendants had attempted to solicit the business of this company for several years. HRH had been D.C. Guelich's insurance broker. D.C. Guelich informed defendants that plaintiffs were D.C. Guelich's insurance broker in February of 2005. Thereafter, defendant Taylor met with the

principals of D.C. Guelich, to discuss Texas AGA services. On August 25, 2005, D.C. Guelich appointed Texas AGA its broker of record. Texas AGA obtained insurance for D.C. Guelich from Lancer Insurance Company. Plaintiff Miller remained D.C. Guelich's broker of record for its workmens' compensation insurance.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted).

If, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, Rule 56 mandates the entry of summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Liberty Lobby,

477 U.S. at 247-48

Rule 56(e) specifically provides that, if the moving party submits a properly supported motion, the non-moving party must provide evidence in opposition by affidavit or as otherwise permitted under the rule. Fed.R.Civ.P. 56(e). A party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Only evidence "sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case merits consideration beyond the Rule 56 stage." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)(en banc).

It is on this standard that the court has reviewed the defendants' motion for summary judgment and plaintiffs' response thereto. Based on the pleadings and evidence of record, and the briefs filed in support and opposition thereto, the court concludes, as a matter of law, that there is no genuine dispute over material facts. Accordingly, the court concludes that defendants are entitled to judgment as a matter of law.

## III. DISCUSSION

In order to state a cause of action for intentional interference with existing or prospective contractual relations under Pennsylvania law, plaintiffs must plead and prove: (1) that a contractual or prospective contractual relationship existed between plaintiffs and a third party; (2) defendants took purposeful action, intending to harm that relationship; (3) that no privilege or justification applies to the harmful action; (4) damages resulted from the defendants' conduct; and, for prospective contractual relations, (5) a reasonable likelihood that the relationship would have occurred but for the interference of defendants. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998).

Pennsylvania courts have recognized the "competitor's privilege" set forth in § 768 of the Restatement (Second) of Torts. Id. A defendant's actions are privileged if the conduct: (1) concerns the subject of competition between the parties; (2) does not use wrongful means; (3) does not create an unlawful restraint on trade; (4) has at least the partial goal of advancing an interest in competing with the plaintiff. The plaintiffs have the burden of pleading and proving that the defendants' conduct was not privileged. Id. The competitor's privilege applies to either prospective contracts, or contracts that are terminable at will. Id.

Plaintiffs contend that defendants tortiously interfered with their existing contractual relationships with Maurer & Scott and D.C. Guelich. As an initial matter, it is not at all clear that plaintiffs had a contractual relationship with either party at the relevant time. Rather, it appears that plaintiffs and defendants were competing to obtain the business of these companies. At best, these were contracts which were terminable at will.

Further, the allegation that defendants terminated the Producer Agreement with Ebensburg Insurance Agency in order to prevent plaintiffs from selling insurance written by the Fairmont Group to Maurer & Scott and D.C. Guelich is simply wrong. Defendants have submitted undisputed evidence that these companies purchased insurance written by Lancer Insurance Company. Defendants have also submitted undisputed evidence that plaintiffs have sold insurance written by Lancer Insurance Company to other clients. Thus, plaintiffs cannot state a cause of action against defendants.

In addition, at least with regard to the insurance business of Maurer & Scott, plaintiffs concede that they are the current broker of record for this company. Thus, plaintiffs cannot, as a matter of law, establish damages.

A more fundamental problem for plaintiffs, however, is their failure to adduce any evidence whatsoever in support of

their contentions. An initial status conference was held before the court on May 23, 2006. Thereafter, this court entered a scheduling order which provided that discovery would close on September 22, 2006. Although plaintiffs contend that this motion for summary judgment is premature and discovery is needed, they have not identified the precise nature of the discovery necessary nor have they established, as required by Rule 56(f), that they were in some way prevented from obtaining evidence in support of their case. Fed.R.Civ.P. 56(f). Rather, plaintiffs have merely restated the allegations of their complaint. This is insufficient to cast doubt on the sworn testimony that defendants have submitted.

According to Mr. Bangs's testimony, plaintiffs and defendants are competitors. Defendants' actions concerned the subject of competition between the parties, namely, selling insurance coverage to the commercial explosives and blasting industry. Defendants did not use wrongful means. In fact, according to Mr. Bangs's testimony, defendants were initially unaware of plaintiffs' relationship with either Maurer & Scott or D.C. Guelich. The representatives of these companies contacted defendants independently. In the course of their discussions, defendants were surprised to learn that plaintiffs had been the brokers of record for these companies in the past. Plaintiffs have not alleged, nor have they proven, that defendants' conduct

created an unlawful restraint on trade. Further, the only evidence in this case establishes that the goal of defendants' action was to advance an interest in competing with plaintiffs. As noted above, plaintiffs have the burden of pleading and proving that the defendants' conduct was not privileged. Plaintiffs have failed to do either.

IV. CONCLUSION

Accordingly, this 21 day of December, 2006, upon consideration of defendants' motion for summary judgment [document no. 15], IT IS HEREBY ORDERED that defendants' motion for summary judgement is GRANTED.

BY THE COURT:

______________________, J.

cc: All Counsel of Record